IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| DEBBIE RIVERA, | ) |
| | ) |
|        Plaintiff, | ) |
| | ) |
| vs. | )    No. CIV. 05-1049 RB/ACT |
| | ) |
| SMITH'S FOOD & DRUG CENTERS, | ) |
| | ) |
|        Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** came before the Court on Defendant's Objections to Magistrate Judge's April 19, 2006 Order (Doc. 52), filed on April 27, 2006. Having considered the submissions, and being otherwise fully advised, I find Defendant's motion well-taken, as stated herein.

**I.  Background.**

Plaintiff is suing Defendant, her former employer, for sexual harassment and retaliatory discharge in violation of Title VII of the Civil Rights Act of 1964, as amended, and the New Mexico Human Rights Act. (Second Amended Compl. 1.)

Specifically, Plaintiff alleges that her immediate supervisor - Defendant's Store Director, Brian Van Klaveren - sexually harassed her. (*Id*. 2-3.) Plaintiff also maintains that Defendant terminated her in retaliation for reporting Van Klaveren's abuse to her union representative. (*Id*. 3.) On December 17, 2004, Plaintiff contacted her union representative regarding Van Klaveren's alleged abuse. (*Id*.) That same day: (1) Plaintiff informed Jenny Lee, Defendant's Personnel Director, that she intended to file a sexual harassment complaint against Van Klaveren; and (2) Lee informed Van Klaveren of Plaintiff's discrimination charge. (*Id*.) On December 28, 2004, Lee and Van Klaveren accused Plaintiff of "dishonesty" regarding several purchases she made at Defendant's store during

early and mid-December 2004.  (*Id*. 3-4.)  Defendant terminated Plaintiff's employment on January 4, 2005.  (*Id*. 4.)

Plaintiff filed her Equal Employment Opportunity charge on January 6,. 2005.  (Pl.'s Resp. Def.'s Objections 5.)  After receiving her right to sue letter, Plaintiff filed her Complaint on August 31, 2005.  (Notice of Removal 1.)

**II.     Plaintiff's Request for Production No. 14.**

Defendant objects to a single portion of the Magistrate Judge's April 19, 2006 discovery order.  (Def.'s Objections 1.)  Namely, Defendant argues that the Magistrate Judge erred in granting Plaintiff's Motion to Compel regarding Plaintiff's Request for Production No. 14.

Request for Production No. 14 seeks "copies of statements given regarding this matter." (Order at 5.)  Defendant maintained that "two written witness statements" - by Van Klaveren and Cindy Sanchez, Defendant's Scan Coordinator, respectively - constitute "work product" and are privileged attorney-client communications.  (Def.'s Resp. to Pl.'s Mot. to Compel. at 14.)

It is undisputed that Ian Adams - Defendant's in-house counsel and Employee Relations Director - "directed Defendant Lee to gather information from witnesses" after "Plaintiff filed the discrimination charge that preceded this lawsuit."  (*Id.* Ex. C (Adams Decl.) ¶¶3-4.)  Adams anticipated that the charge would "result in litigation" at the time he requested that Lee secure statements from Van Klaveren and Sanchez.  (*See id*.)

Lee sought and obtained "written statements" from Van Klaveren and Sanchez.  (*Id.* ¶3.) "[T]he statements at issue here were written by the witnesses."  (Def.'s Objections 3.)  While it is unclear when exactly Sanchez was asked for a written statement, Van Klaveren testified that Lee requested a statement from him December 17, 2004.  (Def.'s Reply in Supp. Objections Ex. A (Van

Klaveren Depo.) at 2.)

### III. Van Klaveren and Sanchez's respective statements are protected work product.

Considering whether the work-product doctrine applies requires a two-part analysis.[1] *See Frontier Refining, Inc. v. Gorman-Rupp Co., Inc.*, 136 F.3d 695, 704 (10th Cir. 1998). At the outset, it bears noting that this Court narrowly construes "testimonial exclusionary rules and privileges." *In re Qwest Commc'n Intern. Inc.*, 450 F.3d 1179, 1185 (10th Cir. 2006) (internal quotation marks and citation omitted).

First, as the Magistrate Judge rightly noted, Defendant - the "party asserting a work product privilege as a bar to discovery" - "must prove the doctrine is applicable." *Resolution Trust Corp. v. Dabney*, 73 F.3d 262, 266 (10th Cir. 1995); *Peat, Marwick, Mitchell & Co. v. West*, 748 F.2d 540, 542 (10th Cir. 1984). Second, if the work-product privilege does apply, the burden shifts to the discovering party to prove that it: "(1) can demonstrate substantial need for the material and (2) . . . is unable to obtain the substantial equivalent of the material by other means without undue hardship." *Frontier Refining, Inc.*, 136 F.3d at 704 (citing FED. R. CIV. P. 26(b)(3) and finding that "the district court erred in ordering production of the fact work product without applying the substantial need/undue burden test.").

#### A. Defendant established that Van Klaveren and Smith's statements constitute work product.

Under the work-product doctrine, "materials collected by . . . counsel in the course of preparation for possible litigation" are generally not discoverable. *See Hickman v. Taylor*, 329 U.S. 495, 505 (1947). As the Court of Appeals for the Tenth Circuit recently explained, the doctrine is

---

[1] Because, as discussed below, the Court finds the witness statements at issue protected under the work-product doctrine, the Court need not reach Defendant's attorney-client privilege arguments.

derived from the Supreme Court's *Hickman v. Taylor* decision and is codified in FED. R. CIV. P. 26(b)(3). *See In re Qwest Commc'n Intern. Inc.*, 450 F.3d at 1186. The privilege continues to be interpreted under both authorities. *Id*.

In *Hickman*, "the source of the work-product doctrine," the "plaintiffs sought the production of certain witness statements collected by defendants' attorney," as well as "memoranda concerning the attorney's interviews of other witnesses." *Id*. (citing *Hickman*, 329 U.S. at 499-500). Because plaintiffs "made no showing of need for the materials or justification for securing them from defendants' counsel," the Court concluded that the targeted materials "'fell outside the arena of discovery.'" *Id*. (quoting *Hickman*, 329 U.S. at 499-500). Later, the work-product doctrine was codified in Rule 26(b)(3), which provides:

> a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial *by or for another party* or *by or for that other party's representative* (including the other party's . . . agent) *only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means*. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

FED. R. CIV. P. 26(b)(3) (emphasis added).

Turning to the instant case, the Magistrate Judge correctly noted that Defendant bears the burden of establishing that the witness statements constitute work product, *see Frontier Refining, Inc.*, 136 F.3d at 704, and that the doctrine "does not protect facts concerning the work product or facts contained within the work product." (Order at 6 (quoting *Resolution Trust Corp.*, 73 F.3d at 266).) But while the facts themselves may be discoverable through other means, the same is not necessarily true for the documents themselves. *See Hickman*, 329 U.S. at 508; *cf. Resolution Trust*

4

*Corp.*, 73 F.3d at 266 (finding that the work-product doctrine "does not preclude inquiry into the mere fact of an investigation" because it "does not protect facts concerning the *creation* of work product or *facts contained within* work product" (emphasis added)).

Indeed, "[w]ork product can be . . . non-opinion work product, i.e., fact work product." *See In re Qwest Commc'n Intern. Inc.*, 450 F.3d at 1186 (citations omitted). And, although fact work product "may be discoverable" where "circumstances" so warrant, generally, the work-product doctrine will protect the documents themselves from discovery. *See id.* (citing *Hickman*, 329 U.S. at 511-12). "'Not even the most liberal of discovery theories can justify unwarranted inquiries into the *files* . . . of an attorney,'" because "'it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel.'" *Id.* (quoting *Hickman*, 329 U.S. at 511-12); *see* 8 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & RICHARD L. MARCUS, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2d § 2023 (1994) ("There is a distinction, noted in the Hickman case itself, between documents that a party has assembled and the facts it has learned from those documents.").

Contrary to Plaintiff's position, the witness statements are not stripped of their work product status because Lee - rather than attorney Adams - procured Van Klaveren and Sanchez's statements. The work-product doctrine "'is an intensely practical [doctrine], grounded in the realities of the litigation in our adversary system.'" *In re Qwest Commc'n Intern. Inc.*, 450 F.3d at 1186 (quoting *Hickman*, 329 U.S. at 499-500). This includes the fact that "attorneys often must rely on the assistance of . . . . agents in the compilation of materials in preparation for trial." *United States v. Nobles*, 422 U.S. 225, 239 (1975).

Likewise, the fact that Van Klaveren and Sanchez penned their own statements - as opposed

5

to simply signing a document prepared by counsel or his representative - does not negate the documents' being work product. Rule 26(b)(3) expressly covers "documents . . . prepared in anticipation of litigation . . . *by or for another party* or *by or for that other party's representative* (including the other party's . . . *agent*)." FED. R. CIV. P. 26(b)(3) (emphasis added). As such, the targeted witness statements constitute attorney work product: they are "materials collected by [Defendant's] counsel in preparation for possible litigation." *See Hickman*, 329 U.S. at 505.

### B. Plaintiff did not demonstrate substantial need/undue hardship regarding the Van Klaveren and Sanchez statements.

Having found the attorney work-product applicable, the burden shifts to Plaintiff - the discovering party - to make a substantial need/undue hardship showing as to each witness statement. *See Frontier Refining, Inc.*, 136 F.3d at 704 (citing FED. R. CIV. P. 26(b)(3)). As the Tenth Circuit explained:

> the work product privilege fosters the general policy against invading the privacy of an attorney's *course of preparation* [which] is so well recognized and so essential to an orderly working of our system of legal procedure that a burden rests on the one who would invade that privacy to establish adequate reasons to justify production through a subpoena or court order.

*United States v. Colorado Supreme Court*, 189 F.3d 1281, 1287 (10th Cir. 1999) (quoting *Hickman*, 329 U.S. at 511); *see also* 8 WRIGHT, MILLER & MARCUS, *supra*, § 2027 ("The rationale of *Hickman* is that one party should not be able to take advantage of the work product of the adversary if there are other means for finding out what the evidence is.").

Here, there is no indication that the facts contained in Van Klaveren and Sanchez's statements are not "readily available" to Plaintiff "direct[ly] from the witnesses" through other discovery tools (e.g., depositions) without undue hardship. *See Hickman*, 329 U.S. at 509. It is clear from Defendant's briefing in relation to its Objections, for instance, that Defendant has not, and will not,

6

"seek to obstruct Plaintiff from deposing witnesses to learn the facts." (Def.'s Objections 4.) Further, Defendant noted that it has not "instruct[ed] any deponent, including . . . Mr. Van Klaveren, not to answer any questions" about the "actual underlying facts" of this proceeding. (*Id.*) Also, while Plaintiff has not yet deposed Ms. Sanchez, Defendant pledged that if she is deposed, it will "not obstruct Plaintiff from" questioning Sanchez "about relevant events." (*Id.* 4 n.2.) Nor do any other attendant circumstances give Plaintiff "substantial need" for the witness statements themselves. *See* FED. R. CIV. P. 26(b)(3).

Plaintiff raises two arguments in support of her Rule 26(b)(3) showing. First, she maintains that the witnesses' statements were "contemporaneous" to the events of December 2004 relevant to this proceeding and, thus, this "temporal proximity," in itself, is sufficient to show "substantial need." (Pl.'s Resp. to Def.'s Objections 5-6.) Second, Plaintiff argues that she had an "unequal investigative opportunity" that precluded her from obtaining the witnesses statements before now. (*Id.* (citing, without further explanation, "counsel's presence, the pending EEO investigation . . . and the limitations on discovery proper to filing suit").) Neither of Plaintiff's contentions are availing.

The Court of Appeals for the Fourth Circuit has found, in the context of an accident, that contemporaneous witness statements may support a showing of substantial need:

> Statements of either the parties or witnesses taken immediately after the accident and involving a material issue in an action arising out of that accident, constitute unique catalysts in the search for truth in the judicial process; and where the party seeking the discovery was disabled from making his own investigation at the time, there is sufficient showing under the amended Rule to warrant discovery.

*Nat'l Union Fire Ins. Co. v. Murray Sheet Metal Co.*, 967 F.2d 980, 985 (4th Cir. 1992) (internal quotation marks and citation omitted). Plaintiff's sexual harassment and retaliation claims are, however, wholly distinguishable from claims arising out of an accident where contemporaneous

statements are often crucial to fact finding.  Additionally, the Second Amended Complaint makes clear that Plaintiff avers wrongdoing by Van Klaveren as early as February 2004.  (Second Am. Compl. 2.)  While the nature and chronology of the facts contained in Sanchez's statement are not clear, the document was drafted sometime after December 17, 2004.  Regardless, neither statement appears to be "contemporaneous": both were drafted *after* Plaintiff submitted her EEO discrimination charge.  *Cf. Coogan v. Cornet Transp. Co.*, 199 F.R.D. 166, 167-68 (D. Md. 2001) (contemporaneous statement: accident report drafted at scene of incident).

Further, the record does not, in fact, reflect that Plaintiff had an unequal opportunity to investigate the facts underlying this case.  *Cf. Cairns v. Chi. Exp., Inc.*, 25 F.R.D. 169, 169-70 (N.D. Ohio 1960) ("Plaintiff was unable to interview or take the deposition . . . until *two and one-half years* after the accident" (emphasis added)).  Plaintiff, as noted above, already had the opportunity to question Van Klaveren about the facts contained in the statement when she deposed him February 3, 2006.  Sanchez is - and has apparently been - available to be deposed.  And, most notably, Plaintiff failed to explain why: (1) seeking the facts contained in the statements from the witnesses themselves would be inadequate; or (2) she had unequal opportunity to investigate the underlying facts such that would warrant compelling disclosure of Defendant's work product.  *See, e.g.*, *Hohenwater v. Roberts Pharm. Corp.*, 152 F.R.D. 513, 517 (D.S.C. 1994) (party seeking to compel work product "can ask these persons questions about the contents of the [document] . . . and the witnesses can answer, even though the [document] itself is not discoverable."); *Marchello v. Chase Manhattan Auto Fin. Co.*, 219 F.R.D. 217, 219 (D. Conn. 2004) (conclusory allegations of "substantial need"/"undue hardship" inadequate to "overcome the work product doctrine").

Hence, neither the witness statements' temporal proximity, nor Plaintiff's claims of "unequal

investigative opportunity," are sufficient to constitute "substantial need." *See Hickman*, 329 U.S. at 510-511 ("Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference."). As such, Plaintiff cannot overcome the work-product doctrine. *See Hickman*, 329 U.S. at 510-511; *see also Baker v. Gen. Motors Corp.*, 209 F.3d 1051, 1054 (8th Cir. 2000) ("Discovery of a witness statement to an attorney is generally not allowed if that witness is available to the other party.").

**IV.   Conclusion.**

For the foregoing reasons, the Van Klaveren and Sanchez written statements are entitled to protection under the work-product doctrine. *See Hickman*, 329 U.S. at 510-511. In this regard, Defendant's Objections are well-taken and the Magistrate Judge's Order dated April 19, 2006 will be set aside. *See* FED. R. CIV. P. 72(a).

**IT IS SO ORDERED**.

_____
**ROBERT C. BRACK
UNITED STATES DISTRICT JUDGE**