**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

| | |
|---|---|
| **DEBBIE RIVERA,** )<br>)<br>**Plaintiff,** )<br>)<br>vs. )<br>)<br>**SMITH'S FOOD & DRUG CENTERS,** )<br>)<br>**Defendant.** ) | No. CIV 05-1049 RB/ACT |

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court upon Plaintiff's Motion for Attorneys' Fees (Doc. 151), filed April 5, 2007. Plaintiff Debbie Rivera seeks an attorneys' fees award of $219,238.04. Having carefully reviewed relevant authority, the parties' motion papers - including their exhibits and, therein, the affidavits of J. Douglas Foster, Allegra Carpenter, Mary Han, Philip Davis, Whitney Warner, Christopher Moody, and Repps Stanford - and being otherwise advised, I hereby **grant** Plaintiff's motion to the extent stated herein.

**I.     Background.**

The facts are familiar to the parties and need not be fully recounted here. For present purposes, it is sufficient to note that:

> Ms. Rivera worked for [Defendant Smith's Food & Drug Centers ("Smith")] . . . from 1984 until she was terminated on January 4, 2005. . . . Ms. Rivera alleges that the store manager, Brian Van Klaveren, sexually harassed her. On December 17, 2004, Ms. Rivera reported the harassment to Jenny Lee, Smith's regional human resources manager. On January 4, 2005, Smith terminated Ms. Rivera, ostensibly for misrepresenting the price of an Odwalla juice drink on two occasions. Ms. Rivera filed suit in state court asserting state-law claims against Smith, Mr. Van Klaveren, and Ms. Lee. Defendants removed the matter to this Court based on diversity jurisdiction.

(Mem. Op. & Order [Doc. 81] 1-2.)  Plaintiff moved to remand.  In denying Plaintiff's motion, this Court "determined that Van Klavern [sic] and Lee were fraudulently joined" and that Plaintiff's state tort law claims were preempted.  (Mem. Op. & Order [Doc. 50] 4.)  As a result:

> The claims against the individuals were dismissed . . . . [Pursuant to this Court's Memorandum Opinion and Order of April 21, 2006,] Ms. Rivera filed a second amended complaint alleging claims for hostile work environment, employment discrimination, and retaliation against Smith under Title VII and NMHRA . . . . seek[ing] compensatory damages, punitive damages, attorney fees, and costs.

(Mem. Op. & Order [Doc. 81] 2.)  Ultimately, on March 2, 2007, a petit jury returned a verdict in Plaintiff's favor on her retaliation claim.  (Jury Verdict 2; Judgment 1.)

Plaintiff's Motion for Attorneys' Fees seeks fees in the amount of $219,238.04, plus post-judgment interest.  *See* 28 U.S.C. § 1961. Plaintiff's requested award is itemized as follows:

| **Attorney** | **Hours** | **Hourly Rate** | **Total** |
|---|---|---|---|
| Christopher Moody | 9 | $250.00 | $2,250.00 |
| Whitney Warner | 500.30 | $225.00 | $112,567.50 |
| Repps Stanford | 493.50 | $175.00 | $86,362.50 |
| Legal Assistant | 7.25 | $80.00 | $580.00 |
| *Subtotal:* | | | $201,760.00 |
| Whitney Warner | 15<br>Estimated hours spent on motions for attorneys' fees and costs.<br>(*See* Warner Aff. ¶12.) | $225.00 | $3,375.00 |
| *Subtotal:* | | | $205,135.00 |
| | *6.875% gross receipts tax on services* | | $14,103.03125 |
| **Total:** | | | **$219,238.03** |

Additionally, Plaintiff requests that, to the extent her Motion to Tax Costs (Doc.150) is denied, those itemized expenses be granted "as fees to the extent permitted by 42 U.S.C. § 1988." (Pl.'s Mot. for

2

Attorneys' Fees 1 n.1)  Lastly, she seeks leave to "supplement in full and to submit additional attorneys' fees requests based on additional work that will continue in this case." (*Id*. 2.)

## II.     Discussion.

The Court of Appeals for the Tenth Circuit has explained that prevailing civil rights plaintiffs are ordinarily entitled to reasonable attorney's fees:

> The Civil Rights Attorney's Fees Awards Act allows a prevailing party in a civil rights case, including suits brought under 42 U.S.C. § 1983, to seek reimbursement for his attorney's fees, to the extent the fees are reasonable. Although the power to award such fees is discretionary, that discretion is narrow once a civil rights plaintiff demonstrates that he is a "prevailing party." The implication of our cases is that when a plaintiff prevails in a civil rights suit, the plaintiff ordinarily should not have his vindication of these rights eviscerated by an obligation to pay his attorney's reasonable fees.
> . . . .
> In any fee request under § 1988(b), a claimant must prove two elements: (1) that the claimant was the "prevailing party" in the proceeding; and (2) that the claimant's fee request is "reasonable."

*Robinson v. City of Edmond*, 160 F.3d 1275, 1280 (10th Cir. 1998) (citations omitted).

Here, Defendant argues that the award sought by Plaintiff is not reasonable.[1] Assessing the reasonableness of a fee request requires this Court to:

> begin by calculating the so-called "lodestar amount" of a fee, and a claimant is entitled to the presumption that this lodestar amount reflects a "reasonable" fee. The lodestar calculation is the product of the number of attorney hours "reasonably expended" and a "reasonable hourly rate." Once an applicant for a fee has carried the burden of showing that the claimed rate and number of hours are reasonable, the resulting product is presumed to be a reasonable fee as contemplated by [§] 1988.

*Robinson*, 160 F.3d at 1281 (internal quotation marks and citations omitted).  Defendant contests the reasonableness of Plaintiff's fee request in two respects: (1) its inclusion of fees related to Plaintiff's unsuccessful Motion to Remand (Doc. 5), filed October 31, 2005, and joinder of state-law tort claims

---

[1] The first element is not contested: Plaintiff is clearly the "prevailing party."  (Jury Verdict 2.)

3

against former individual defendants Van Klaveren and Lee; and (2) the hourly rates requested by Attorneys Whitney Warner and Repps Stanford.  (Def.'s Resp. 1.)

### A. Number of hours: hours requested for compensation are reasonable.

The Court must conduct an independent review of "the number of hours reasonably spent by counsel for the party seeking fees." *Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1250 (10th Cir. 1998).  Assessing whether the number of hours for which Plaintiff seeks compensation is reasonable  "is controlled by the overriding consideration of whether the attorney's hours were 'necessary' under the circumstances." *Robinson*, 160 F.3d at 1281.  The Tenth Circuit has explained that:

> The prevailing party must make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary.  A district court should approach this reasonableness inquiry much as a senior partner in a private law firm would review the reports of subordinate attorneys when billing clients....  However, the record ought to assure us that the district court did not "eyeball" the fee request and cut it down by an arbitrary percentage.
>
> . . . among the factors to be considered [a]re (1) whether the tasks being billed "would normally be billed to a paying client," (2) the number of hours spent on each task, (3) "the complexity of the case," (4) "the number of reasonable strategies pursued," (5) "the responses necessitated by the maneuvering of the other side," and (6) "potential duplication of services" by multiple lawyers.
> . . .
> In this analysis, [a court] ask[s] what hours a reasonable attorney would have incurred and billed in the marketplace under similar circumstances.  In other words the object is to simulate the market where a direct market determination is infeasible.

*Robinson*, 160 F.3d at 1281 (internal brackets, quotation marks, and citations omitted).  At the outset, the Court underscores that the attorney billing records submitted by Plaintiff are detailed and well-organized.

Defendant only objects to the number of hours expended by Plaintiff's counsel in litigating

this case on two bases. First, although Defendant does not dispute that Plaintiff is the prevailing party, Defendant nevertheless suggests that the Court should not "award all of [Plaintiff's] attorneys' fees" by noting that "she prevailed on *only one* of the many claims that she asserted in this case." (Def.'s Resp. 3 (emphasis added).) To the extent Defendant contends that Plaintiff's attorney fee award should be discounted because the jury rejected her Title VII discrimination claim, the argument is not supported by the caselaw. *Robinson*, 160 F.3d at 1283. As the Tenth Circuit explained in *Robinson*:

> There is no doubt that a district court may reduce a lodestar calculation on the grounds that a prevailing party has achieved only partial success. However, as the [Supreme] Court noted in *Hensley*, many civil rights suits involve multiple claims based on a common core of facts or ... related legal theories. In such cases, it is inappropriate for a district court to evaluate the individual claims as though they were discrete and severable. Litigants should be given the breathing room to raise alternative legal grounds without fear that merely raising an alternative theory will threaten the attorney's subsequent compensation. Instead, a court should focus on the significance of the overall relief that the prevailing party has won: "The result is what matters."
> . . . .
> . . . when a plaintiff achieves the principal goal of her lawsuit, *lack of success on some of her interrelated claims may not be used as a basis for reducing the plaintiff's fee award*. When a plaintiff achieves most or all of what she aimed for in a civil rights lawsuit, her lawyer should receive a fully compensatory fee.

*Robinson*, 160 F.3d at 1283 (emphasis added) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983)) (additional internal quotation marks and citations omitted); *see also Smith v. Norwest Fin. Acceptance, Inc.*, 129 F.3d 1408, 1418-19 (10th Cir. 1997) (rejecting argument that fee award should be reduced; plaintiff's successful Title VII claim was "intimately related" to her unsuccessful state-law contract and emotional distress claims). And, while clearly "a fee request may be reduced when some of a plaintiff's interrelated claims are unsuccessful," the "failure on some interrelated claims . . . . does not preclude a full recovery when the plaintiff achieves the outcome that she sought." *Id*. at 1283-84

5

(citing *Hensley*, 461 U.S. at 435).

Plaintiff's claims all arose out of the same factual situation. Because she prevailed on her Title VII retaliation claim, the Court finds Plaintiff "achieve[d] the principal goal of her lawsuit." *Robinson*, 160 F.3d at 1283. The fee award will not be reduced due to her "lack of success" on her remaining, "interrelated" claims. *Id*.

Second, Defendant argues that "all of the hours that Plaintiff's counsel spent on the[] unnecessary and wasteful tasks" related to Plaintiff's Motion to Remand, and "claims dismissed by the Court in ruling on the motion to remand," should be disallowed. (Def.'s Resp. 5.) Specifically, it maintains:

> Plaintiff was not required to spend dozens of hours on an improvident motion to remand or on fraudulently adding preempted claims against individual defendants in an attempt to defeat federal jurisdiction . . . . Plaintiff attempted to avoid federal jurisdiction by fraudulently asserting claims against individual defendants that she had "no possibility" of winning. Although Plaintiff admits that these maneuvers resulted in "additional briefing," she does not acknowledge that her attempt to remand the case was unsuccessful, nor that her claims against the individuals were fraudulently joined and failed as a matter of law. Plaintiff also does not discount her fee request in the slightest to recognize this expensive, unsuccessful, and unnecessary detour from the "principal" claim in the case.

(*Id*. 4.) On these grounds, Defendant seeks to have Plaintiff's requested award reduced by $33,830. (*Id*.; *see also id*. 4 n.2.)

Defendant mischaracterizes the Court's ruling of February 16, 2006. (Mem. Op. & Order [Doc. 28] 1.) This Court did *not* find that "Plaintiff filed an *improvident* remand motion or fraudulently added or asserted preempted claims." (Pl.'s Reply 5 (emphasis added).) In denying Plaintiff's Motion to Remand and dismissing Plaintiff's state tort claims this Court underscored that:

> Fraudulent joinder is a term of art, it does not reflect on the integrity of plaintiff or counsel, but rather exists regardless of the plaintiff's motives when the circumstances

6

>do not offer any other justifiable reason for joining the defendant. Thus, *the integrity of Rivera and her counsel are not at issue*; the question is whether there was fraudulent joinder as that term has been interpreted by the case law.

(*See* Mem. Op. & Order [Doc. 28] 8-12 (emphasis added)); *see also supra* Part I.  Additionally, in a later ruling, this Court took pains to clarify that neither Plaintiff's remand motion, nor her state law tort claims - however unsuccessful - were frivolous:

>In her original complaint, Rivera chose to allege only state-law claims under the NMHRA. After the case was removed, she filed a motion to remand and filed a first amended complaint that added state-law tort claims. Obviously, Rivera preferred to have this matter heard in state court. She was entitled to argue for her preferred forum.  Rivera moved to amend to include Title VII as a basis for recovery approximately two weeks after she learned that the case would remain in federal court. If Rivera had amended her complaint to include Title VII as a basis for recovery before the Court ruled on her motion to remand, the jurisdictional issue would have been rendered moot because federal question jurisdiction would have existed. *Rivera's attempt to protect her choice of forum does not imply a dilatory motive*.

(Mem. Op & Order [Doc. 50] 5 (emphasis added)).

Accordingly, the Court does not find that Plaintiff's requested fee award should be reduced to exclude hours associated with these issues.  *Accord Jane L. v. Bangerter*, 61 F.3d 1505, 1512 (10th Cir. 1995) ("Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee." (quoting *Hensley*, 461 U.S. at 435)); *Tidwell v. Fort Howard Corp.*, 989 F.2d 406, 412-13 (10th Cir. 1993) (same).  *Cf. Browder v. City of Moab*, 427 F.3d 717, 722 (10th Cir. 2005) ("In a case like this, where Plaintiff 'achieved only partial or limited success,' the calculation for reasonable attorney's fees requires more than just determining "the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate" because such " may be an excessive amount." (quoting *Hensley*, 461 U.S. at 436)); *Murtagh v. Bd. of County Comm'rs*, No. CIV 00-1679

7

BB/LFG, Mem. Op. & Order of 7/12/02, at 17 ("the Court finds that based on imprecise and vague billing entries, as described in detail above, along with Murtagh's limited overall success, the number of attorney fee hours requested by merits counsel should be reduced by 35% in order to arrive at a reasonable fee given the circumstances of this litigation.").

Because the Court finds the requested award is "reasonable," and that Defendant has not otherwise challenged the requested award, Plaintiff's "attorneys [a]re entitled to be fully compensated." *Tidwell*, 989 F.2d at 412. Plaintiff's fee request will be granted in full.

### B.    Hourly rates: requested hourly rates for Warner and Stanford are reasonable.

Setting the hourly rates for an attorney requires the Court "to determine what the lawyer would receive if he [or she] were selling his [or her] services in the market rather than being paid by court order." *Case*, 157 F.3d at 1257 (internal quotation marks and citation omitted). Counsel is not "automatically entitled" to their "normal market rate"; the Court must rely on "prevailing market rates" - provided it is adequately evidenced in the record - for attorneys with comparable, experience, and skill. *See id*.

Acceptable market evidence "includes affidavits submitted by the parties and other reliable evidence of local market rates for civil rights litigation at the time fees are awarded." *Id*. at 1256. At the same time, the rate must also account for the quality of legal services rendered. *Id*. at 1257. "*Only* if the district court does not have before it adequate evidence of prevailing market rates may the court, in its discretion, use other relevant factors, including its own knowledge, to establish the rate." *Id*. (emphasis added) (citation omitted).

Here, Defendant challenges the reasonableness of Warner's $225 hourly rate and Stanford's $175 hourly rate as being:

8

>    too high, representing a 12½ percent increase over what Ms. Warner was awarded
>    in 2005 and an incredible 40 percent increase over what Mr. Stanford was awarded
>    that same year . . . . These increases are not reasonable and not in line with attorneys
>    of comparable experience.
>
>    . . . .
>
>    Plaintiff . . . cited to local opinions awarding fees to attorneys with many more
>    years experience than either Ms. Warner or Mr. Stanford, who graduated from law
>    school in 1998 and 2002, respectively . . . .[2]

(Def.'s Resp. 2-3 (citations omitted).)  Defendant also argues that *Walton v. Waste Mgmt. of N.M.*, No. CIV 01-1337 LH/WDS, Mem. Op. & Order of 8/31/05 (D.N.M. Aug. 31, 2005), supports its position.  Accordingly, Defendant urges this Court to reduce the requested rates to "$200 per hour for Warner and $150 per hour for Stanford."  (*Id.* 3.)

In her Reply, Plaintiff underscores that the requested rates are reasonable because they are "based on evidence of the prevailing market rates" and that Defendant failed to supply any affidavits from Albuquerque-area attorneys "contesting Plaintiff's evidence of the current 2007 market rate for skilled litigators in employment law."  (Pl.'s Reply 1-2 (noting the seven affidavits filed in support of Plaintiff's requested hourly rates).)

The Court believes that, in this case, the requested hourly rates are reasonable.  First, the Court notes that the instant matter was extensively and skillfully litigated by all counsel, as evidenced by the four separate Memorandum Opinion and Orders issued in this matter, as well as the attorneys' polished trial presentations during the five-day trial.

Second, the reasonableness of the requested hourly rates is demonstrated by the affidavits - including four from attorneys without a direct interest in the litigation's outcome - submitted by Plaintiff.  (*E.g.*, Foster Aff. ¶4 (New Mexico civil rights practitioner with personal knowledge of: (1)

---

[2]Defendant does not contest the reasonableness of Attorney Christopher Moody's requested $250 hourly rate.  (Def.'s Resp. 2.)

Warner and Stanford's respective work, skill, and experience; and (2) prevailing markets rates in the New Mexico legal community for employment-related litigation); Carpenter Aff. ¶5 (same); Han Aff. ¶5 (same); Davis Aff. ¶21 (same).)

Significantly, Defendant did not submit any affidavits challenging Plaintiff's evidence of the prevailing market rates "for civil rights attorneys of similar skill and experience" in New Mexico. *See Case*, 157 F.3d at 1257. Nor did Defendant demonstrate that the rates it recommends - $200 for Warner and $150 for Stanford - reflect prevailing market rates. This Court is obligated to adhere to the "adequate evidence of prevailing market rates" on the record before it. *Case*, 157 F.3d at 1257.

Third, *Walton* does not require a different result. As to Warner's rate, this Court agrees with *Walton* that it is significant that:

> Ms. Warner has practiced primarily in the areas of employment and civil right law since 1998. She worked in the area of human resources prior to attending law school, from which she graduated with honors.

*Walton*, Mem. Op. and Order 08/31/05 at 12. As was apparently the case in *Walton*, here: "Ms. Warner was lead counsel in this case and achieved excellent results for her client." *Id.* The Court also agrees with *Walton*'s belief that, regardless of how long she has practiced, Warner is a "skilled advocate who should be compensated accordingly." *Id.* The $200 hourly rate awarded to Warner in *Walton* reflected 2005 prevailing market rates. Two years later, the $225 requested hourly rate represents a significant, but not unreasonable, increase. (*E.g.*, Davis Aff. ¶16 (Davis' hourly rate of $275 - effective since July 2005 - will increase by $25, to $300, in July 2007); *see also* Pl.'s Reply 3 (arguing that "Warner is entitled to a *higher* rate in 2007, not the exact same rate she received [in *Walton*, which was] based on a *previous* market rate." (second emphasis added).)

As to Stanford's rate, Defendant is correct: in August 2005, the *Walton* court found the

10

requested $150 rate unreasonable and fixed it at $125, instead. *Walton*, No. CIV 01-1337 LH/WDS, Mem. Op. & Order of 08/31/05. But, notably, in *Walton*: (1) multiple affiants were "not personally familiar with [Stanford] or his work," "ascribe[d] their familiarity with [his] reputation merely to the fact that he is associated with . . . Warner," and made "no mention of his experience or skill"; and (2) Stanford was "admitted to the practice of law . . . during the pendency of th[e] litigation," and on that basis deemed him an "inexperienced lawyer." *Id*. 12-13.

Here, by contrast, all the affidavits submitted by attorneys in support of Stanford's hourly rate attested to being "personally familiar" with Stanford and his "skill, experience, and reputation in the legal community." (*E.g.,* Foster Aff. ¶3; Carpenter Aff. ¶4; Han Aff. ¶4; Davis Aff. ¶21.) Moreover, Stanford has two more years' experience than he did in the *Walton* litigation.

Even more importantly, Stanford had a markedly different role in this litigation. As Plaintiff notes:

> . . . Stanford performed non-trial work as a first and second year associate in that case. Here, Mr. Stanford was intimately involved in all facets of the case, including the trial. This justifies a higher rate, as confirmed by Plaintiff's supporting affidavits and the relevant case law.

(Pl.'s Reply 3.) Indeed, while Warner was clearly lead counsel, Stanford presented Plaintiff's opening arguments and conducted a significant number of the witness examinations during the five-day trial. As such, given Plaintiff's success in this case and Stanford's significant role therein, his five years of legal practice belie his effectiveness. (Davis Aff. ¶21 (Stanford's "role as an associate in a small plaintiffs' law firm has required him to assume more complex duties than those normally assigned to associate counsel . . . . The increased opportunities he has had in litigating employment cases since his arrival at Moody and Warner accounts in large part for his greater degree of skill and expertise

11

than one would expect from a lawyer licensed since 2002."); *see also* Pl.'s Reply 3 (arguing that: (1) an apt "comparator" to Stanford is an attorney - also admitted to practice law in 2002 - who was, in July 2005, awarded a $160 hourly rate, *see Sanchez v. Matta*, No. CIV 03-0297 JB/LFG, 2005 U.S. Dist. LEXIS 21974 (D.N.M. July 29, 2005)); and (2) because two years have elapsed since that $160 hourly rate was approved, in 2007, an hourly rate of $175 is reasonable given Stanford's "employment litigation and trial work").)

### C.    Other expenses: further briefing by the parties is required.

As noted above, Plaintiff requests that, to the extent denied, expenses itemized in her Motion to Tax Costs (Doc. 150) be granted "as fees to the extent permitted by 42 U.S.C. § 1988." (Pl.'s Mot. for Attorneys' Fees 1 n.1)  On June 26, 2007, the Clerk's Order Settling Costs (Doc. 175) was entered.  A number of expenses itemized in the Motion to Tax Costs were disallowed under Local Rule 54 and 28 U.S.C. § 1920.  Neither Plaintiff nor Defendant has addressed the propriety of granting most of these particular expenses under § 1988.  The Court requests that the parties submit additional briefing on this issue.  Supplemental filings should be submitted as follows: Plaintiff's motion is due by July 16, 2007; Defendant's response and Plaintiff's reply must be served in accordance with D.N.M.LR-Civ. 7.6(a).

### III.   Conclusion.

For the forgoing reasons, the Court finds that: (1) a $225 hourly rate for Warner is reasonable; (2) a $175 rate for Stanford - albeit "at the high end" of "reasonable rates for a lawyer of his skill and experience" - is reasonable, in light of the prevailing market rates evidence submitted here  (Davis Aff. ¶20); and (3) further briefing is required on the issue of whether the expenses disallowed by the Clerk's Order (Doc. 175) should be awarded as fees under § 1988.  Plaintiff may

submit additional requests for attorneys' fees going forward.

Plaintiff's Motion for Attorneys' Fees (Doc. 151), filed April 5, 2007, is hereby **granted** to the extent stated herein.  Attorneys' fees are awarded in the amount of **$219,238.03**, plus post-judgment interest.  *See* 28 U.S.C. § 1961.

**IT IS SO ORDERED.**

_____
**ROBERT C. BRACK
UNITED STATES DISTRICT JUDGE**